UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEVIN C. WILLIAMS,

    Petitioner,

          v.                           Civil No. 14-cv-1280-JPG

UNITED STATES OF AMERICA,        Criminal No 13-cr-40019-JPG

    Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Kevin C. Williams' motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  On June 5, 2013, the petitioner pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).  The Court sentenced the petitioner to serve 120 months in prison, 3 years of supervised release, a $200 special assessment, and restitution in the amount of $1,880,602.99.  The petitioner did not appeal his conviction or sentence.

In his timely § 2255 motion, the petitioner raises the following claims:

1. Ineffective assistance of counsel before Williams' guilty plea when counsel:
   a. failed to explain to Williams the waiver of appellate and collateral attack rights contained in the plea agreement and failed to attempt to strike the § 2255 waiver from the plea agreement; and
   b. failed to hire a forensic accountant to assist in the defense prior to the plea agreement; and

2. Ineffective assistance of counsel at sentencing when counsel:
   a. failed to hire a forensic accountant to assist in the defense by pointing to flaws in the sentencing guidelines; and
   b. failed to present mitigating facts and arguments from a forensic accountant to lower the loss amount for offense level and restitution purposes.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United

States District Courts, the Court has determined that it is plain from the motion and the record of the prior proceedings that the petitioner is not entitled to relief on any ground.

**I.     § 2255 Standards**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"  *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014)), *cert. denied*, 83 U.S.L.W. 3743 (Mar. 23, 2015).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

To be clear, Williams is not challenging that he committed his crimes and is not saying he wants to withdraw his guilty plea.  *See* Pet'r's Mem. Supp. § 2255 Mot. at 13 ("The Petitioner is not asking for a trial.  The Petitioner is not asking to have his record expunged.  The Petitioner is accepting of the 2 counts of which he pleaded guilty to in order to save [the victim] from the physical trauma of depositions and any trial.") (Doc. 1-1 at 13); Pet'r's Ex. to § 2255 Mot. at 6 ("Again, the discussion isn't provided to escape prosecution for the two counts that were agreed to in the plea agreement.") (Doc. 2 at 6); Pet'r's Ex. to § 2255 Mot. at 24 ("Again, Williams is not attacking his conviction on the two counts agreed to.") (Doc. 2 at 24).  His challenge is limited to the loss amount used to calculate his sentence of imprisonment and the restitution he was ordered to pay.  Restitution, however, cannot be challenged in a § 2255 motion.  *United States v. Sloan*,

505 F.3d 685, 697 (7th Cir. 2007); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). The Court therefore rejects Williams' challenges to his restitution and will only consider his challenge to the loss figure that drove his term of imprisonment.

## II. Analysis

### A. Waiver of Right to File § 2255 Motion

As a preliminary matter, the Court considers whether Williams has waived his right to file a § 2255 motion. Williams' plea agreement contained a broad waiver of his right to challenge his sentence through a direct appeal and a § 2255 motion:

> [I]n exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. . . . Defendant's waiver of appeal as set forth in this section specifically includes a waiver of any right to appeal or collaterally challenge a decision of the District Court to apply the specific offense characteristics set forth in U.S.S.G. §2Bl.1(b)(l)(J) [loss amount], as well as a decision to impose a sentence that is consistent with the application of that Guideline. This section also includes a waiver of any right to appeal or collaterally challenge the amount of restitution ordered by the District Court.

Plea Agrmt. at 11-12 (Case No. 13-cr-40019-JPG; Doc. 24). Such waivers may be unenforceable if the plea agreement was involuntary or the defendant received ineffective assistance of counsel in connection with negotiating the plea agreement. *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999); *see Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). Because Williams alleges that he received ineffective assistance of counsel in connection with the negotiation of the plea agreement, the Court cannot say that Williams' waiver is enforceable without examining the ineffectiveness question first.

3

B.     Summary of Proceedings

Before the Court turns to the substantive allegations of Williams' motion, a brief review of the proceedings is helpful.   Williams, a CPA with decades of experience in accounting, was originally indicted on 35 counts of wire fraud and 5 counts of money laundering.   The conduct underlying all the offenses charged was related to a scheme to defraud a vulnerable elderly couple or, after the husband died, the widow.   She was in her mid-90s at the time of the criminal proceedings and had very poor vision and difficulty hearing.   The money trail evidencing the fraud was somewhat complex and presented difficult sentencing issues regarding offsetting the gains and losses of the victim.   At the time of this criminal proceeding, law enforcement was also investigating Williams for tax evasion and false statements to a government officer but had not brought any charges based on that alleged conduct.

Williams' attorney (or attorney team, for several assistant federal public defenders worked on his case together) negotiated with the Government a plea agreement under which Williams would plead guilty to one wire fraud charge and one money laundering charge and the Government would dismiss the other charges.   In that agreement, Williams agreed to pay restitution of specific sums to the Internal Revenue Service, his former employer and the Illinois Department of Employment Security.   In exchange, the Government agreed to stop its investigation of Williams' suspected tax evasion and false statements to a government officer and not to charge him with any crimes based on that conduct.

The plea agreement set forth the Government's position as to what the loss amount would be under the United States Sentencing Guidelines Manual:   more than $2,500,000 but less than $7,000,000.   This factor was expected to be the main driver of the guidelines offense level.   In the plea agreement, Williams reserved the right to challenge the loss amount at sentencing but

waived his right to challenge it on direct appeal or in a collateral attack. *See* Plea Agrmt. at 6-7 (Case No. 13-cr-40019-JPG; Doc. 24). The Government stated in the agreement that it anticipated this loss amount, in combination with other adjustments and Williams' criminal history category of I, would yield a sentencing guideline range of 97 to 121 months in prison. Williams' entered the plea, in part, to alleviate the need to depose the victim, who was frail and might not be available to testify at a trial, and in return the Government agreed to delay entry of Williams' guilty plea until after his daughter's wedding so she could enjoy the occasion unburdened by worry for her father.

After the wedding, Williams participated in the standard plea colloquy required by Federal Rule of Criminal Procedure 11 in which he testified under oath that:

- He was fully satisfied with the counsel, representation and advice given to him by his counsel. *See* Plea Tr. at 3 (Case No. 13-cr-40019-JPG; Doc. 60);

- He read the plea agreement and went over it with his attorney before he signed it. *See* Plea Tr. at 8 (Case No. 13-cr-40019-JPG; Doc. 60);

- He had waived his appellate rights, including his collateral attack rights. Plea Tr. at 9-10 (Case No. 13-cr-40019-JPG; Doc. 60);

- The Government's summary of the factual basis for his offense was correct:

  > [T]he essence of the case is that the defendant had a close personal relationship with an elderly woman referred to in the plea documents as "E. S." He was an accountant and assisted her in doing her bills, providing financial advice, those sorts of things.
  >     Over the course of the years set forth in the indictment, the defendant was taking money that was properly under his control or care, as her accountant and financial advisor, and he was transferring them into accounts that he owned or controlled, including business accounts, his personal investment accounts, his personal savings accounts, paid his mortgage with some of the money, essentially converted money that – for his own personal use that he was not allowed to do. Those wire transfers involved transfers of funds through interstate commerce, to support the wire fraud theory. . . .
  >     As it relates to the money laundering count, essentially what the

> defendant was doing was, he would solicit large sums of money from the victim, purportedly for investment purposes; for example, in Count 37, he had solicited a $25,000 principal investment.   He took a small portion of the amount of money that the victim gave him for investment purposes and conducted a downline financial transaction, purchasing a cashier's check, and gave a portion of the victim's own money back to her, falsely representing it to be an interest payment from investments that he was making when, in reality, there were no such investments.   He simply kept that money and was returning smaller portions of her own money back to her to falsely represent that he had, in fact, invested the money when he had not.

Plea Tr. at 11-13 (Case No. 13-cr-40019-JPG; Doc. 60); and

- No threats or promises had been made to induce him to plead guilty and that he was doing so as his own free and voluntary act.   *See* Plea Tr. at 7, 10 & 14 (Case No. 13-cr-40019-JPG; Doc. 60).

At the sentencing hearing several months later, the Court heard testimony from Government witnesses and argument from both counsel about the appropriate losses and gains with respect to the three accounts that comprised the bulk of the loss amount.   Williams did not call any expert witness to testify as to flaws in the fraud guidelines or as to his version of the gains or losses.   Instead, he relied on his counsel to explain his loss theory, which was essentially that the loss should be reduced based on insurance premiums paid on behalf of the victim and periodic payments to the victim during the scheme.

During a recess, the parties crunched the numbers and agreed that even if the Court accepted all of the offsetting gain arguments Williams had presented, the total loss would still exceed $2,500,000 and would get Williams into the same offense level category the Government sought.   *See* Sent. Tr. at 56 (Case No. 13-cr-40019-JPG; Doc. 59).   The Court made findings consistent with that category (a loss of $3,710,746.84, to be specific), found Williams' sentencing range was 97 to 121 months as anticipated by the plea agreement, and sentenced Williams to serve 120 months in prison.

The Court now turns to counsel's performance in the proceedings described above.

### C. Ineffective Assistance of Counsel in Plea Negotiations

Williams alleges his counsel was ineffective in connection with the negotiation of the plea agreement. Specifically, he faults her for failing to explain to him that by signing the plea agreement he was waiving his right to appeal and collaterally attack his sentence and for failing to try to obtain a plea agreement without such waivers. He also believes she was deficient in failing to hire a forensic accountant to assist in his defense prior to the plea.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's

trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. *Jones*, 635 F.3d at 915; *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann*, 397 U.S. at 771); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Hill*, 474 U.S. at 58; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt*, 574 F.3d at 458 (7th Cir. 2009); *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). To make such a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony that he would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996)

(citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.").

Williams' argument regarding the § 2255 waiver is unusual.  As he states in his § 2255 filings, he does not contest that he is guilty of the crimes to which he pled and he does not seek to vacate those convictions.  He apparently just wants different plea agreement terms that would have allowed him the benefits of the deal he got but not all of the restrictions; he wants to contest on collateral review counsel's constitutional effectiveness in arguing the loss amount. Essentially, he argues not that he would not have pled guilty had counsel performed differently but that *he would have pled guilty to a different deal* had counsel performed differently.

With respect to the § 2255 waiver provision, Williams has not suggested what his counsel could or should have done to obtain a deal for him that did not include a § 2255 waiver.  Williams appears not to understand that even competent defense counsel's powers are not unlimited; they cannot force the Government to offer a deal with their preferred terms.  Unless Williams can explain how his counsel could have gotten the deal he wanted without a § 2255 waiver, which he has not, he cannot establish she was deficient.

To the extent Williams suggests his counsel should have hired a forensic accountant[1] to convince the Government its loss figures in the plea agreement were too high, Williams has not pointed to any forensic expert who has actually come up with such an analysis.  When a petitioner accuses his counsel of failing to investigate and obtain evidence for his case, in order to establish prejudice he must "provide the court sufficiently precise information, that is, a comprehensive

---

[1] Williams' counsel hired a forensic accountant to assist in the preparation for sentencing, but Williams wanted her to hire the expert earlier in the case.

9

showing as to what the investigation would have produced." *Richardson*, 379 F.3d at 488 (internal quotations omitted); *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted).   He cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence.   *See Hardamon*, 319 F.3d at 951.   Without sufficiently precise information, a petitioner cannot show that constitutionally adequate counsel would have performed any differently than his actual counsel did.   *See Richardson*, 379 F.3d at 488.   Thus, without being able to point to the expert accounting evidence he believes his counsel should have found and presented to the Government, Williams cannot show his counsel's performance was deficient or that the missed evidence would have had a reasonable chance of changing the plea agreement the Government offered him or his counsel's recommendation to accept the deal that was offered.

More importantly, as to all of Williams' theories about how his counsel was constitutionally deficient leading to his guilty plea, her mere failure to obtain a more favorable plea deal is not enough to show prejudice under the *Strickland* test.   "[A] claim that a defendant would not have entered this particular plea agreement is not sufficient to show prejudice."   *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006) (citing *Hill,* 474 U.S. at 59).   A § 2255 petitioner must show he would not have pled guilty *and would have gone to trial*.   *Id.*   Here, Williams says that but for his counsel's error, he "would not have accepted the $1,880,602.99 loss [restitution] as he did for . . . Offense Level Computation. . . .," Pet'r's Mem. Supp. § 2255 Mot. at 11 (Doc. 1-1 at 11), but he does not contend he would have gone to trial.   Without objective evidence that he would have insisted on a trial had counsel performed differently, Williams cannot show prejudice from his counsel's performance leading to the plea deal.

Overall, it is the Court's observation that counsel's performance was clearly within the

range of reasonably competent counsel, and counsel's overall performance is the appropriate frame of reference. *Groves v. United States*, 755 F.3d 588, 593 (7th Cir.), *cert. denied*, 135 S. Ct. 501 (2014). The evidence the Court heard against Williams was strong, and a key witness – the victim – would have been very sympathetic to a jury. The chance that Williams would have been acquitted was slim. Nevertheless, counsel was able to negotiate a deal that (1) eliminated 38 of 40 charges, (2) headed off further potential federal criminal prosecutions for tax evasion, obstruction of justice, theft, and fraud involving unemployment insurance, (3) delayed Williams' family's exposure to his conviction until after his daughter's wedding, (4) reserved the right to argue the loss amount at sentencing, and (5) maintained a 3-point offense level reduction for acceptance of responsibility.[2] In the Court's opinion, this was one of the best outcomes Williams could have hoped for. It is beyond question that counsel was competent in her overall representation of Williams.

Having found no ineffective assistance of counsel in connection with negotiation of the plea agreement, the Court finds Williams' waiver of his appellate rights, including his right to collaterally attack his sentence, is enforceable. Dismissal of Williams' § 2255 motion on this basis is warranted.

D. <u>Ineffective Assistance of Counsel at Sentencing</u>

Even if Williams had not waived his right to argue ineffective assistance of counsel at sentencing, the Court would reject that argument. Williams alleges his counsel was ineffective in connection with his sentencing because she failed to hire a forensic accountant to assist the defense

---

[2] The Court notes that if Williams had testified at his sentencing consistent with the substance of the 40+ pages he filed in support of his § 2255 motion, he would have seriously risked losing the offense level reduction for acceptance of responsibility and gaining additional points for obstruction of justice.

11

in arguing the sentencing guidelines for fraud were flawed and to present expert testimony that the loss amount should have been lower.

To the extent Williams believes his counsel was deficient because she failed to hire a forensic accountant to challenge the fairness of the fraud guidelines, that argument fails because he has not specified what such an expert would have said or how it would have had a reasonable probability of changing the Court's decision to sentence Williams within the guidelines sentencing range. As noted above, when a § 2255 petitioner faults his attorney for failing to investigate and present evidence, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence would have had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 853-54 (7th Cir. 2014). Here, counsel argued in her sentencing memorandum and at the sentencing hearing that the fraud guidelines were flawed and that the Court should vary below the guideline range because of those flaws. *See* Sent. Mem. at 13-15 (Case No. 13-cr-40019-JPG; Doc. 35); Sent. Tr. at 121-22 (Case No. 13-cr-40019-JPG; Doc. 59). Williams has not pointed to any other argument or any admissible evidence from any specific witness that she could have presented that would have had a reasonable chance of changing the Court's decision not to allow a downward variance because the guidelines were flawed. Without any specifics about what Williams believes counsel should have done to prove the guidelines were flawed, the Court cannot say she was deficient or that Williams suffered any prejudice from her performance.

To the extent Williams faults his counsel for failing to present expert testimony in support of a lower the loss amount, his argument suffers from the same flaws. First, Williams admits that his counsel *did* hire an expert – Sullivan CPA – prior to sentencing to help her understand the loss

amount calculation and to develop arguments to lower that amount, but he complains that she did not call the accountant to testify at sentencing.  The accountant met with counsel and Williams at least twice, but Williams believes the accountant and his attorney never fully understood his estate planning approach with the victim.  Williams believes counsel was also delinquent for failing to direct the accountant to meet with the Government to discuss its numbers, with the Probation Office to explain the alleged errors in the presentence investigation report ("PSR") regarding the loss amount, with victims to discuss their losses, and with an attorney who was also involved in the elderly victim's estate planning.

However, in support of his argument that his counsel was constitutionally ineffective, Williams offers nothing other than his own self-serving, unsworn statements about what he believes an accurate loss amount should be – only $16,174 to the Illinois Department of Employment Security.  He has not provided objective evidence that there is any accountant who would have agreed with him and so testified under oath such that there is a reasonable probability the Court would have been convinced by his testimony.  Without more specifics, Williams' vague allegations that counsel should have located and presented the testimony of a favorable expert are not enough to show he was prejudiced by his counsel's performance.  Without such information, Williams cannot show that constitutionally adequate counsel would have performed any differently than his actual counsel did.  *See Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).

Williams also faults his counsel for not cross-examining Government witness IRS Special Agent Rusty Kiser, who provided substantial testimony supporting the Government's view of the loss amount.  Williams notes that Kiser appeared distracted and confused on the stand and thinks his counsel should have highlighted this in cross-examination to make Kiser's testimony less

credible. It would not have. The Court was aware the Kiser struggled to remember certain details but was impressed with his overall testimony as reliable and adequate to support the Government's proposed loss figure. Highlighting his distraction, which was already evident to the Court, would not have had a reasonable chance of causing the Court to disbelieve him in light of his competent explanation of a spreadsheet summarizing evidence of the Government's version of the victim's actual and intended loss.

Williams also thinks his counsel should have cross-examined Kiser better about the Government's loss calculations. First, Williams has not specified what other questions he thinks his counsel should have asked to damages Kiser's credibility. Second, Williams' counsel did an outstanding job of cross-examining Kiser about his failure to review old records and about potential credits to offset the losses the Government proposed, and she ended up prevailing on the credit issue to some degree.[3] Williams has not shown his counsel's performance was deficient or that any different performance would have had a reasonable chance of changing the outcome of the Court's loss calculation and guideline range findings.

For these reasons, the Court finds that Williams has not shown he received ineffective assistance of counsel in connection with his plea or at his sentencing. On the contrary, it is plain from the motion and the record of the prior proceedings that the petitioner is not entitled to § 2255 relief on any ground, and the Court must dismiss the motion. *See* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

---

[3] As the parties discovered during a recess at the sentencing hearing, even had Williams' counsel prevailed on *all* her arguments, it would not have made a difference in Williams' offense level.

**III.     Miscellaneous Motions**

    A.     <u>Request for Transcripts</u>

In his motion, Williams asks the Court to provide him a free copy of the transcripts of the proceedings in his case. It appears Williams may have communicated earlier with the Clerk's Office or with the court reporter about obtaining a copy of his guilty plea and sentencing transcript, but this is the first time Williams has asked for transcripts in a court filing. When he inquired earlier, he was told the transcripts would cost him $3.65 per page, the court reporter's standard rate for copies of transcripts that have not already been prepared, for approximately 166 pages (a total of $605.90). Since then, someone else has ordered the transcripts, they have been prepared, and they are now available to purchase from the Clerk's Office at $0.50 per page (a total of $83.00).

Williams' request is governed by 28 U.S.C. § 753(f), which provides, in pertinent part:

> Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.

However, before providing copies free of charge, a district court may require the requestor to show: (1) that he has exhausted *all* other means of access to his files (*i.e.*, through his trial and appellate counsel), (2) that he is financially unable to secure access to his court files (*i.e.*, through a showing similar to that required in 28 U.S.C. § 1915(a)(2) which includes a certified copy of the defendant's prison trust account for the previous six-month period prior to filing), and (3) that the documents requested are necessary for the preparation of some specific non-frivolous court action. *See United States ex rel. Davidson v. Wilkinson*, 618 F.2d 1215, 1218-19 (7th Cir. 1980); *Rush v. United States*, 559 F.2d 455, 459 (7th Cir. 1977)

Williams does not satisfy this standard. First, he has not requested and has not been

granted permission to bring this case *in forma pauperis* and he has not demonstrated he is unable to pay the $83.00 his transcripts now cost. Additionally, the transcripts are not needed to decide the issues presented in this lawsuit, which the Court has decided based primarily on Williams' lack of specificity about the investigation he claims his counsel should have done and about the evidence he claims she should have presented, not conduct that would be reflected in the transcript. Accordingly, the Court denies Williams' request for free transcripts of the proceedings in his underlying criminal case.

      B.      <u>Motion to Seal Entire Case (Doc. 3)</u>

Williams also asks the Court to maintain this entire case file under seal. He believes it is not appropriate to expose details about the victim's finances to the public.

Williams' requests bumps up into the general rule that judicial proceedings leading to a final decision and materials on which a judicial decision rests are presumptively in the public domain. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006); *Methodist Hosps. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996); *cf. Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994). There is a common law right of access to documents filed in litigation. *Methodist Hosps.*, 91 F.3d at 1031; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). "Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Grove Fresh*, 24 F.3d at 897; *see generally Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). "Though its original inception was in the realm of criminal proceedings, the right of access has since been extended to civil proceedings because the contribution of publicity is just as important there." *Grove Fresh*, 24 F.3d at 897. The common law holds that "court files and documents should be open to the public unless the court finds that its

records are being used for improper purposes." *Grove Fresh*, 24 F.3d at 897. There are exceptions, however, to the general rule of access to court documents. For example, a court may seal records to protect trade secrets or other kinds of information deserving of long-term confidentiality. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002); *see Nixon*, 435 U.S. at 598 (to protect business information that could harm litigant's competitive standing).

In addition to this common law right of access to court documents, there is a constitutional right of access to court records. *Grove Fresh*, 24 F.3d at 897; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982). "The First Amendment presumes that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question." *Grove Fresh*, 24 F.3d at 897 (internal quotations omitted). "This presumption is rebuttable upon demonstration that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Grove Fresh*, 24 F.3d at 897 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "[W]hen a court finds that the presumption of access has been rebutted by some countervailing interest, that 'interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Grove Fresh*, 24 F.3d at 898 (quoting *Press Enterprise*, 464 U.S. at 510).

The Court believes the presumption of public access is overcome by the need to keep the victim's finances private. The Court has carefully reviewed Williams' filings to determine which pages contain information that should remain private and finds the following pages shall be maintained under seal:

- Attachment 1 and Appendices 1, 2, 3, 5 (Doc. 2, Page ID #25-#36, #38-39); and
- Attachment 5 (Doc. 2-1, Page ID # 69).

All other pages in Williams' filings shall be unsealed.

## IV.   Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).   To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Tennard*, 542 U.S. at 282; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").   The Court finds that Williams has not made such a showing and, accordingly, declines to issue a certificate of appealability.

## V.   Conclusion

For the foregoing reasons, the Court:

- **DENIES** Williams' § 2255 motion (Doc. 1);

- **GRANTS in part** and **DENIES in part** Williams' motion for leave to file the entire case under seal (Doc. 3);

- **DIRECTS** the Clerk of Court to refile the following pages as unsealed exhibits to Williams' § 2255 motion (Doc. 1):

    o   Appendix 4 to Attachment 1 (Doc. 2, Page ID #37); and

- o   Attachment 2, 3, 4 and their appendices (Doc. 2 to 2-1, Page ID #40-68); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   April 14, 2015**

             s/ J. Phil Gilbert
             **J. PHIL GILBERT**
             **DISTRICT JUDGE**